UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JIMMY R. GREEN, ET AL.            CIVIL ACTION NO. 06-330

versus            JUDGE WALTER

CITY SERVICES REFINERY, ET AL.            MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

       More than twenty plaintiffs filed this putative class action in a Bossier Parish state court in 1991. They named as defendants approximately a dozen corporations that were alleged to have owned or carried on operations on certain property in Bossier Parish and allowed toxic chemicals to be deposited on the property. Plaintiffs alleged that they either owned or leased that property or adjacent property and, because of the pollution, suffered personal injuries and loss of property value.

       Defendants quickly removed the case based on an assertion of diversity jurisdiction. Less than a month after the case was removed, Plaintiffs filed an amended complaint to add several plaintiffs/class representatives and eleven defendants. All or most of the new defendants are Louisiana citizens. All or most of the Plaintiffs, new and old, are also Louisiana citizens. Plaintiffs, soon after adding the non-diverse defendants, filed a motion to remand based on an asserted lack of diversity. The court analyzed the issue pursuant to Hensgens v. Deere & Co., 833 F.2d 1179 (5th Cir. 1987) and, considering factors such as

Plaintiffs' lack of dilatoriness and their explanation for the delay in naming the Louisiana defendants, granted a motion to remand. That was in July 1991. A copy of that ruling appears as Exhibit 1 to Doc. 30 in this civil action.

In March 2006, fifteen years after the case was first removed to this court, defendants removed it again based on an assertion of diversity jurisdiction. They based the second removal on the voluntary-involuntary rule and argued that the case is not subject to the one year limit on the removal of diversity cases set forth in 28 U.S.C. § 1446(b). Plaintiffs responded with a Motion to Remand (Doc. 30) that is now before the court. The parties have offered extensive briefing of the voluntary-involuntary rule, the one year limit, disputes about the citizenship of various parties, and a number of other issues and sub-issues. After reviewing the record, the undersigned issued an order (Doc. 38) that raised questions about the citizenship of certain plaintiffs and invited the parties to address the questions. Defendants responded by filing an Amended and Restated Notice of Removal (Doc. 46).

There are several difficult issues that would have to be resolved in Defendants' favor for the removal to survive the pending motion to remand. The court need not resolve all of those issues because, as recommended below, the voluntary-involuntary rule was not triggered in this case to permit an opportunity for a second removal.

**The Voluntary-Involuntary Rule**

Cases are often filed in state court against both diverse and non-diverse defendants. Such a case would not be removable because of the lack of complete diversity. If, however,

the plaintiff were to voluntarily dismiss the non-diverse defendants, leaving only diverse parties, the remaining defendants would have an opportunity to remove the case pursuant to the judicially created voluntary-involuntary rule. The several circuit courts to address the issue have recognized the doctrine. The Fifth Circuit is among those courts. Weems v. Lewis Dreyfus Corporation, 380 F.2d 545 (5th Cir. 1967).

The rule or doctrine gets its name from the requirement that it be a voluntary act of the plaintiff that dismisses the non-diverse defendant(s) for the right of removal to be triggered. If the dismissal of the non-diverse defendant(s) is the result of either the defendant's or the court's acting against the wish of the plaintiff, the case may not be removed. Weems, 380 F.2d at 546.

**Analysis**

Plaintiffs asserted in their timely motion to remand that the removal was deficient for a number of reasons. One asserted reason is that Plaintiffs have not voluntarily and definitively dismissed all of the non-diverse defendants. Plaintiffs admit that they did dismiss all claims against defendant Alexis Park Apartments, but they represent that they have not voluntarily dismissed any claims against the several other non-diverse defendants.

Defendants respond that Plaintiffs' failure to prosecute their claims against the non-diverse defendants other than Alexis Park Apartments resulted, years ago, in the abandonment of those claims under La. C. C. P. art. 561. Then, when the final non-diverse defendant, Alexis Park Apartments, was dismissed voluntarily, the prior abandonments and

the voluntary dismissal combined to trigger the voluntary-involuntary rule. A review of the relevant facts and Louisiana abandonment law is beneficial to a resolution of the removal law issue.

One of the non-diverse defendants, Alexis Park Apartments, filed an answer while the case was pending in this court in 1991. Defendants assert in a memorandum (Doc. 36, p. 6) that Plaintiffs never served any of the other diversity-destroying defendants. Defendants represent in their Notice of Removal that, after remand, Plaintiffs twice amended their petition to add new plaintiffs, but neither of the amendments were served on any of the non-diverse defendants. Defendants also represent that Plaintiffs have never served any discovery requests on any of the non-diverse defendants except Alexis Park Apartments. Doc. 46, ¶¶ 22 and 23.

Plaintiffs do not represent that they ever served any of the non-diverse defendants other than Alexis Park Apartments or otherwise prosecuted their claims against those defendants. Plaintiffs do represent that they have participated in significant discovery and other litigation, including the filing of a motion for class certification in 2005, but none of those efforts are said to have been directed at any non-diverse defendant other than Alexis Park Apartments. See Memorandum in Support of Motion to Remand (Doc. 30) at pages 11-14.

The state court, on January 31, 2006, granted a joint motion filed by Plaintiffs and two defendants (Alexis Park Apartments and Fairfield Property Management) to dismiss with

prejudice all of Plaintiffs' claims against those two defendants, "reserving all demands against the remaining defendants ...." Doc. 46, Exhibit G. Plaintiffs' attorneys report in a memorandum that the plaintiffs who had claims against Alexis Park were primarily apartment dwellers who have since relocated and can no longer be found. Counsel add that the nature of the claims against the apartment owner was quite different from the nature of the claims against the other defendants, who were alleged to have participated in the actual pollution of the property. Counsel represent that, based on those considerations, they decided to voluntarily dismiss the Plaintiffs' claims against Alexis Park Apartments.

Had Plaintiffs filed a motion to voluntarily dismiss *all* of the non-diverse defendants, there would be little dispute that the "voluntary act" element of the voluntary-involuntary rule would be satisfied. Here, however, Plaintiffs have never taken any affirmative act to dismiss the claims against several named defendants who share the Plaintiffs' Louisiana citizenship. The opportunity for removal was not triggered unless the Louisiana-law abandonment rule urged by Defendants is (a) applicable to all of Plaintiffs' claims against all remaining non-diverse defendants under the facts of this case and (b) the legal equivalent of a voluntary act of dismissal by Plaintiffs.[1]

---

[1] Plaintiffs' lack of service on all of the non-diverse defendants other than Alexis Park does not permit the court to ignore their presence for diversity purposes. Diversity in a removal case is determined from the fact of citizenship of the parties named and not from the fact of service. New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 883 (5th Cir. 1998).

Defendants's abandonment argument is based on La.C.C.P. art. 561. The Article provides that an action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three (formerly five) years. The provision "shall be operative without formal order, but on ex parte motion of any party or other interested person ... the trial court shall enter a formal order of dismissal as of the date of its abandonment." Defendants did not seek or obtain a formal order of dismissal in this case. Defendants rely solely upon a claim of abandonment by operation of law.

If a formal order of dismissal is entered, Article 561 requires the order be served on the plaintiff by the sheriff. The plaintiff may then file a motion to set aside the dismissal within thirty days of service. The rule also provides sixty day periods within which a plaintiff may appeal an order of dismissal or a defendant may appeal an order of denial. State court decisions hold that Article 561 "is to be liberally construed in favor of maintaining a plaintiff's suit." Clark v. State Farm, 785 So.2d 779, 785 (La. 2001).

Plaintiffs point out that the order which dismissed their claims against Alexis Park specifically reserved their rights against the remaining defendants, but Plaintiffs offer no other substantive response to the contention that they have abandoned their claims against the non-diverse defendants. Plaintiffs do argue that any dismissal by abandonment, as a legal matter, is not a voluntary act by the plaintiff that could trigger the voluntary-involuntary rule. A review of the principles underlying the rule, and decisions that have applied the rule, shows that Plaintiffs' legal argument is correct.

The Fifth Circuit in <u>Weems</u> observed that two early Supreme Court cases had established a rule that a case non-removable on the initial pleadings could become removable only pursuant to a "voluntary act of the plaintiff." <u>Weems</u>, 380 F.2d at 547. In one case, the Court held that the right to remove was triggered when the plaintiff voluntarily dismissed all resident defendants. In the other case, the Court held that the right to remove was not triggered when the non-diverse defendants were dismissed by a directed verdict rather than the plaintiff's voluntary act. <u>Id</u>. "Later cases agreed that the crucial point on which [the first case] had turned was the voluntariness of the plaintiff's act, and the rule that an action non-removable when commenced may become removable thereafter only by the voluntary act of the plaintiff was solidified." <u>Id</u>. <u>Weems</u> went on to decide that the voluntary-involuntary rule survived a 1949 amendment to 28 U.S.C. § 1446. The resident defendant in <u>Weems</u> had been dismissed by a directed verdict, so the Fifth Circuit held that the right to remove had not been triggered because "[t]he dismissal, wholly involuntary to the plaintiff, is not final in the sense that it is appealable in the state courts." 380 F.2d at 548.

Courts have described the rule as embracing two principles: judicial economy and deference to a plaintiff's choice of forum. Concerns for judicial economy are behind the requirement that a plaintiff voluntarily dismiss the non-diverse defendant so that there is no doubt that the defendant has been dropped from the case and that the plaintiff will not be able to challenge the dismissal on appeal or otherwise and ultimately destroy diversity jurisdiction if the claim is held to have been improperly dismissed. The requirement that the dismissal be effected by the plaintiff's voluntary act thus avoids the risk of a "yo-yo effect" if the

dismissal is later deemed to have been improper. See, e.g., Higgins v. E. I. DuPont de Nemours & Co., 863 F.2d 1162 (4th Cir. 1988); Drye v. Bankers Life & Casualty Co., 2006 WL 2077563 (W.D. N.C. 2006).

Another rule that must be kept in mind is that removal statutes are strictly construed against removal. Herron v. Continental Airlines, Inc., 73 F.3d 57, 58 (5th Cir. 1996). The voluntary-involuntary rule is judge-made rather than a removal statute enacted by Congress, so the need to afford a strict construction or interpretation of the rule is even greater in this setting. Otherwise, the rules governing removal may become a moving target that shift and expand pursuant to nothing more than the judicial fiat of the district courts. A careful and principled application of the rule will avoid that danger.

There was no voluntary act by Plaintiffs in this case to dismiss any non-diverse defendant other than Alexis Park Apartments. Mere failure of a plaintiff to act, even a failure to timely serve a defendant, has been held to not be the equal of a voluntary act that would trigger the right to remove. See Gandy v. Crompton, 55 F.Supp.2d. 593 (S.D. Miss. 1999) (plaintiff's unreasonable failure to serve the resident defendants was not a clear and definitive expression of desire to discontinue the action as to those defendants); Shemp v. Yamaha Corporation of America, 2006 WL 2669185 (D. Nev. 2006) (plaintiff's failure to oppose a motion, which constituted consent to granting under local rules, was not an affirmative act by plaintiff sufficient to satisfy the rule); and Aydell v. Sterns, 677 F.Supp. 877 (M.D. La. 1988) (instruction in state court petition to withhold service on resident defendants was not sufficient affirmative action by the plaintiff to show intent to dismiss).

Defendants point out that the Aydell decision speculated that at some point a case "may" become removable if the plaintiff does not secure service, but the example given by the court was a case where a non-diverse defendant was not served and plaintiff announced ready for trial. It was only at that moment that the plaintiff's intention to discontinue the action against the non-diverse defendant was sufficiently clear and definitive that removal was allowed.

The abandonment of claims against the non-diverse defendants may have taken place by operation of Louisiana law, if the facts alleged are correct, but that is not the same as an affirmative act or statement by Plaintiffs to dismiss those defendants in a manner so definitive that the dismissal is not subject to later appeal or challenge. Claims of abandonment are subject to challenge and appeal under Article 561, and a review of the annotations under that statute and the many abandonment-related appeals found in the Southern Reporter demonstrates that claims of abandonment and defenses thereto are frequent topics of heated litigation in the Louisiana courts. It is also possible for a plaintiff to defeat a claim of abandonment based on facts that are not evident in the record and that could not be decided by this court today by merely reviewing the record. See Clark, 785 So.2d at 784 (noting two categories of causes from outside the record that may require an order of abandonment be vacated).

The removing defendant bears the burden of demonstrating that removal was proper, and any doubts concerning the propriety of removal should be resolved in favor of remand. Walters v. Grow Group, Inc., 907 F.Supp. 1030, 1032 (S.D. Tex. 1995); York v. Horizon Federal, 712 F.Supp. 85, 86-7 (E. D. La. 1989). Defendants have not demonstrated that

removal was proper under the voluntary-involuntary rule. They can point to no overt, voluntary act of Plaintiffs that reflected their desire to dismiss the non-diverse defendants. The lack of such a definitive act leaves room for a plaintiff accused of abandonment by omission to continue litigating that issue as the case progresses, possibly resulting in a holding several months or years later that the claims were not abandoned. At that moment, diversity would be destroyed, and remand would be required. That would mean the time and resources the federal courts had expended on the case, such as deciding all of the many other removal and jurisdiction issues presented in this case, would have been wasted.

An additional reason to not hold that the voluntary-involuntary rule was triggered in this case is that courts ordinarily favor the construction of removal laws that promote certainty and definiteness with regard to when a case may be removed. <u>See</u>, <u>e.g.</u>, <u>Murphy Bros. v. Michetti Pipe Stringing</u>, 119 S.Ct. 1322 (1999) (requiring actual service rather than mere delivery of a courtesy copy to trigger removal). The rules governing removal are already difficult, due to judicially created doctrines, to glean from even the most careful reading of the removal statutes.

This court should not add another layer of difficulty and unpredictability to those judge-created rules, which is what would happen if the concept of abandonment were introduced in this case as the equivalent to a voluntary act that triggers removal. The indistinct moment of abandonment, under Louisiana law, arrives silently, without announcement, paper or other indicator to mark the moment. To hold that the right to remove could be triggered by such a gossamer and indefinite occasion would not promote certainty

in the law. Rather, it would add the potential for a fact-sensitive dispute in each case as to when the 30-day removal clock began to run. The alleged abandonments in this case were followed by the order that dismissed Alexis Park Apartments, which marked a definite point from which Defendants urge the removal clock began. But if the court sided with Defendants on the legal issue at stake, the court's decision would permit removal in other cases where there was alleged abandonment(s) of all non-diverse defendants but no order or other concrete event to mark the start of the removal period.  The interests of the law in promoting judicial economy and certainty with respect to the removal rules are best served by *not* incorporating a removal trigger that is not a paper or precise event (such as service) but the expiration of a three year period that is  subject to several potential interruptions, will arrive and pass without notice, and will thereafter be subject to attack and a jurisdiction-destroying recision or reversal.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Remand (Doc. 30)** be **granted** and that this case be **remanded** to the 26th Judicial District Court, Bossier Parish, Louisiana.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 22nd day of February, 2007.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE